The State v. Morgan.

THE STATE v. MORGAN, *Appellant.*

In Banc, November 14, 1892.

1. **Practice, Criminal**: INDICTMENT: CONSTITUTION. The legislature may prescribe the form of an indictment and in doing so may dispense with averments essential to a good common-law indictment; the only limitation being that the indictment must furnish to the accused "the nature and the cause of the accusation."

2. ——: ——: ——. The words "nature and cause of the accusation," are not equivalent to "mode and manner" of the commission of the offense.

3. **Cheats, Frauds, Etc.**: REVISED STATUTES, 1879, SEC. 1561: INDICTMENT. An indictment founded on Revised Statutes, 1879, section 1561, is valid and sufficient which charges that defendant with intent to defraud and cheat B did attempt to obtain from him the sum of $1,500, "by means of and by use of a cheat, a fraud, a trick, a deception, false and fraudulent representations and statements and a bogus metal."

4. ——: ——: TITLE OF ACT: CONSTITUTION. Said section 1561, Revised Statutes, 1879, is not obnoxious to the constitutional provision, "that no bill shall contain more than one subject which shall be clearly expressed in the title," because a statement of the prohibited offense is joined with a form of the indictment therefor.

5. ——: ——: ——: ——. Where all the provisions of a statute fairly relate to the same subject, and have a natural connection with it, the subject is single, and if sufficiently expressed in the title the statute is valid.

*Appeal from Macon Circuit Court.*—HON. ANDREW ELLISON, Judge.

AFFIRMED.

*Chas. T. Noland* for appellant.

(1) That portion of section 3826, Revised Statutes,. 1889, which prescribes a form for an indictment, is: unconstitutional, because it violates article 3, and sections 12 and 22 of article 2, and section 28. of article 4, of the constitution of Missouri, and also section 1 of article 14 of the amendments to the constitution of the United States. While it is true legislatures may do, much to simplify forms of pleading, both civil and criminal, yet especially in prosecutions for crime the accused has certain rights under the constitution and at common law which cannot be denied him. And so it has been repeatedly held that, if a legislature pre-scribes a form of indictment, that form must contain such allegations as are essential to reasonable particu-larity and certainty in the description of the offense. *McLaughlin v. State*, 45 Ind. 338; *Com. v. Harrington*, 130 Mass. 35; *State v. O'Flaherty*, 7 Nev. 153; *State v. Learned*, 47 Me. 426; *People v. Olmstead*, 30 Mich. 431; *State v. Crocker*, 95 Mo. 389; *State v. Meyers*, 99. Mo. 107; *State v. Terry*, 19 S. W. Rep. 206. (2) The form of the indictment prescribed by the statute is. essentially bad in that it fails to charge an "intent to cheat and defraud." (3) Section 3826, Revised Statutes, 1889, is obnoxious to the constitutional pro-vision that no bill shall contain more than one subject. which shall be clearly stated in its title. Constitution. of Missouri, sec. 28, art. 12. No one can learn from the title of the provision for a form of indictment. *State ex rel. v. Ransom*, 73 Mo. 78; *Ewing v. Hoblitzelle*,. 85 Mo. 64; *In re Harris*, 66 Mo. 446; *State ex rel. v.. County Court*, 102 Mo. 531; *State v. Wilson*, 7 Ind. 516.

BLACK, J.—The defendant was indicted and con-victed for an attempt to obtain money from Hiram K.. Bargar by a trick, etc.

For all the purposes of the question raised here it is sufficient to say that the evidence tends to establish the following facts: The defendant Adkins, under the assumed name of George Morgan, called upon Hiram K. Bargar, and represented that he and his partner were from Arizona; that his partner was a half-breed Indian and the owner of a valuable gold mine; that they left Arizona in search of one Andrew Bargar whom they had known there; that the Indian proposed to give Andrew a fourth interest in the mine if he would take charge of it. The defendant stated further that he had been to Iowa and received information of the death of Andrew; that he called upon Hiram K. upon the supposition that he was a brother of deceased. By these and like representations the defendant induced Bargar to go to Macon City for the purpose of consulting with the Indian. On the way the defendant said the Indian did not like to put up at a hotel, and for that reason they were camping. The defendant and Bargar went to a tent in the woods and there saw the defendant's partner, who was dressed and painted after the fashion of an Indian. After considerable maneuvering the defendant took from a pile of leaves a pair of scales, a brace, some bits and two pieces of metal represented to be gold bricks. The defendant said he wanted Bargar to estimate their value, and to that end defendant and Bargar weighed them, then bored into the brick, and saved the borings. These they took to two silversmiths who melted them and pronounced them gold, though the smiths differed as to the fineness. In the meantime defendant had proposed to Bargar that they take the bricks to Chicago and sell them. Defendant saw the alleged Indian, and made report that he was getting suspicious. To allay his suspicions the defendant proposed that they leave with him some money, mentioning different amounts.

It was finally agreed that Bargar should go home and get $1,500 to leave with the Indian, and the defendant and Bargar would then go on to Chicago and dispose of the bricks.  Bargar went home, but became awakened to the fact that it was all an effort to swindle him out of his money.  The arrest followed.  The bricks turned out to be copper, and defendant proved to be a resident of St. Louis.

The indictment is founded on section 1561, Revised Statutes of 1879, the latter part of which provides: "In every indictment under this section, it shall be deemed and held a sufficient description of the offense to charge that the accused did, on ——, unlawfully and feloniously obtain, or attempt to obtain (as the case may be), from A B [here insert the name of the person defrauded] his or her money or property by means and by use of a cheat, or fraud, or trick, or deception, or false and fraudulent representation or statement, or false pretense, or confidence game, or false and bogus check, or instrument, or coin or metal, as the case may be, contrary," etc.

The indictment, omitting the caption, reads:

"The grand jurors for the state of Missouri, summoned from the body of said Macon county, impaneled, charged and sworn, upon their oaths present and charge that George Morgan *alias* W. A. Adkins, late of the county aforesaid, on the twenty-fourth day of May, 1889, at the said county of Macon, state aforesaid, did unlawfully and feloniously, with intent to cheat and defraud one Hiram K. Bargar, attempt to obtain from said Hiram K. Bargar the property of said Hiram K. Bargar, to-wit, $1,500, lawful money of the United States, of the value of $1,500, of the property of Hiram K. Bargar, by means of and by use of a cheat, a fraud, a trick, a deception, false and fraudulent representations and statements, and a bogus metal, contrary to

the form of the statutes, and against the peace and dignity of the state.''

The questions made in this court arise out of the action of the trial court in overruling the motion in arrest, which sets out the following grounds: *"First.* The indictment does not state of what the cheat, the fraud, the trick, the deception, the false and fraudulent representations and the bogus metal consisted; or what acts and words constituted such cheat, fraud, etc. *Second.* The indictment does not sufficiently set out and describe the money, property or thing which the defendant attempted to obtain from Hiram K. Bargar.''

The second of these grounds is not true in point of fact; for the indictment states that defendant attempted to obtain from Bargar $1,500, lawful money of the United States, the property of said Bargar.

As to the first ground set out in the motion, it is true that the indictment does not set out the acts and statements constituting the cheat, the fraud, the trick, the deception, the false and fraudulent representations or the bogus metal; but the statute undertakes to say what shall be a sufficient description of the offense, and this indictment complies with the terms of the statute in this respect. The question, therefore, resolves itself into this, whether the statute, in so far as it dispenses with a statement of these details, is in conflict with those provisions of the constitution, which provide that a prosecution like this must be ''by indictment,'' and that ''in criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation.''

This prosecution is by indictment, and it is everywhere held, under like constitutional provisions, that the legislature may prescribe a form of indictment, and in doing so may dispense with averments which would

be held necessary and essential to a good common-law indictment. The limitation and only limitation is that the indictment must furnish to the accused "the nature and cause of the accusation." It is a sacred right to the accused that he may know from the indictment of what he is charged, and be prepared to meet the exact charge presented against him. It must be obvious, therefore, that the question here is not what is necessary to constitute a good common-law indictment, but the question is, does this indictment on its face give the defendant notice of the nature and cause of the accusation?

This question came before the court on this statute in *State v. Fancher*, 71 Mo. 461, more than ten years ago, on an indictment not materially different from the one now in question. It was then held that it was not necessary in order to inform the accused of the nature and cause of the charge against him that the indictment should set out and detail the facts and circumstances, constituting the cheat, fraud, etc. And it was accordingly held that the indictment was free from constitutional objections. That ruling was followed in several subsequent cases. *State v. Connelly*, 73 Mo. 235; *State v. Williams*, 77 Mo. 311; *State v. Norton*, 75 Mo. 180; *State v. Dennis*, 80 Mo. 590; *State v. Bayne*, 88 Mo. 606. It was held in *State v. McChesney*, 90 Mo. 120, that the indictment should set out the name of the person defrauded or attempted to be defrauded; and in *State v. Horn*, 93 Mo. 190, that the name of the person defrauded must be truly stated. These cases are in perfect accord with the prior rulings.

In *State v. Crooker*, 95 Mo. 390, the property was described as "their property, to-wit, certain real and personal property," and it was held the property should have been specifically described. But in the subsequent cases of *State v. Clay*, 100 Mo. 572, and

*State v. Terry*, 109 Mo. 601, the court was divided on this constitutional question, and, hence, the necessity for further observations on the present occasion.

In *Goersen v. Commonwealth*, 99 Pa. St. 388, the defendant was prosecuted for murder. The indictment followed the statute which declared that "it shall be sufficient in every indictment for murder to charge that the defendant did feloniously, wilfully, and of his malice aforethought, kill and murder the deceased." The objection was that the indictment did not aver in what way or manner the murder was committed, and, therefore, did not notify the defendant of "the nature and cause of the accusation." "The argument," says the court, "is based on the assumption that 'nature and cause' are equivalent to 'mode or manner.' They are clearly distinct. The nature and cause of a criminal prosecution is sufficiently averred by charging the crime alleged to have been committed. This must be done. The mode or manner refers to the instrument with which it was committed, or the specific agency used to accomplish the result. It is not necessary to aver either of these in the indictment." And accordingly it was held that the statute prescribing what should be a sufficient description of the offense was constitutional. A like ruling was made under a like statute and constitutional provision in the following cases: *State v. Schnelle*, 24 W. Va. 767; *Rowan v. State*, 30 Wis. 149; *Cathcart v. Commonwealth*, 37 Pa. St. 108; *Noles v. State*, 24 Ala. 672; *Newcomb v. State*, 37 Miss. 383.

In *Wolf v. State*, 19 Ohio St. 254, the statute provided that, "in an indictment for manslaughter, it shall not be necessary to set forth the manner in which, or the means by which, the death was caused; but it shall be sufficient to charge that the defendant did unlawfully kill and slay the deceased." An indictment

following the statute was held to inform the defendant of the nature and cause of the charge.    Says the court: "The manner in which the crime was committed is entirely apart from the nature and cause of the accusation."    To the same effect is *Williams v. State*, 35 Ohio St. 175.    It may be here observed that the statutes just alluded to are in substance and effect transcripts of 24 and 25 Vict., c. 100.

So it is held that a statute which declares that it shall be sufficient "to allege that the party accused did the act with intent to defraud, without alleging an intent to defraud any particular person or body corporate," is free from the constitutional objections. *Turpin v. State*, 19 Ohio St. 544.    In *State v. Corson*, 59 Me. 137, the indictment was for perjury.    It did not distinctly allege that the words set forth as the testimony given were false, but the indictment was in the statutory form.    The indictment was held good though it was conceded that it would be bad under common-law rules.

In *Morton v. People*, 47 Ill. 471, the defendant was indicted under an act to define and punish the crime commonly called the confidence game.    Says the court: "Now, as these devices are as various as the mind of man is suggestive, it would be impossible for the legislature to define them, and equally so to specify them in an indictment; therefore, the legislature has declared that an indictment for this offense shall be sufficient if the allegation is contained in it that the accused did, at a certain time and place, *unlawfully* and feloniously obtain or attempt to obtain the money or property of another by means and by use of the confidence game, leaving to be made out by the proof the nature and kind of the devices to which resort was had."    And further on it is said:    "We are of the opinion that the

offense is so set forth in the indictment that the accused can be at no loss to know what it is with which he is charged, and can so prepare his defense, that he cannot be charged with one offense and arraigned for another and different offense, and that he cannot be tried again for the same offense, it being so distinctly specified in this indictment as to enable him if again charged with the same offense to plead this judgment in bar." That case is in all material respects like the one in hand, and we cannot find that it has been overruled or in the least modified. On the contrary, we find it cited with approval as late as *Loehr v. People,* 132 Ill. 506.

Most of the cases cited by the appellant are in perfect harmony with those which we have mentioned.

Here the indictment does not set out the steps taken to accomplish the trick, fraud and deception, but it does state the time, place, name of the victim, and gives a description of the property. It also charges an unlawful attempt to obtain the property by a trick, etc. We are to look at the indictment as a whole, and doing so it informs the defendant of the offense with which he is charged, so that he can have no difficulty in preparing his defense; and he cannot be again put to trial on the same charge. These things being so, his constitutional right to demand the nature and cause of the accusation is satisfied.

The foregoing condensed statement of the evidence shows how impracticable it would be to set out in detail the various acts and statements which go to make up the fraud, trick, deception, etc. The administration of the criminal law is a practical affair, and we think the observations made in *Morton v. People* entitled to much weight. In our opinion the statute is a valid law and the indictment good and sufficient.

But it is next urged that the form prescribed by the statute does not provide for a statement of the venue, and does not follow that part of the statute which defines the offense in this, that it does not aver an "intent to cheat and defraud," and that the form being defective in any one respect the indictment must fall.

The most casual examination of the statute will show that it does not undertake to prescribe the form of an indictment. It only undertakes to say what shall be a sufficient description of the offense, leaving the other portion of the indictment to be governed by the general rules of law. While the form does not use the words, "with intent to cheat and defraud," it does aver that the accused did "unlawfully and feloniously" obtain or attempt to obtain from A B his money, etc., thus showing that the transaction was not a lawful one. The indictment in this particular case does charge an intent to cheat and defraud, and it is unnecessary to say in this case whether such an averment is indispensable. Conceding that the indictment must make such an averment, and that there must be a specific description of the property, still an indictment having these elements and otherwise following the statute is good. The evident object and purpose of the statute in specifying what is to be deemed a sufficient description of the offense was to dispense with the necessity of setting out the acts and false statements and representations constituting the trick, fraud, deception, etc. This it does in plain language, and it does not follow that the whole statute so far as it relates to the sufficiency of the charge must fall because it is held that the indictment must give a specific description of the property, or because the indictment should in terms charge an intent to cheat and defraud.

The further claim on the part of the appellant is that the part of section 1561, which declares what shall be deemed a sufficient charge in the indictment, is void, because the statute violates section 28 of article 4 of the constitution, whereby it is provided that "no bill shall contain more than one subject, which shall be clearly expressed in the title."

Section 1561 was first enacted in two sections in 1879, under the title "An act to punish cheats, frauds, tricks, deceptions, false and fraudulent representations, statements, false pretenses, confidence games, and using and passing bogus checks, instruments, coins and metals." The two sections were combined and re-enacted by a revised bill in the same year.

Laying out of view the fact that this section is part of a general revised bill, still the objection is not well taken. Where all the provisions of a statute fairly relate to the same subject, and have a natural connection with it, the subject is single, and if the subject is sufficiently expressed in the title the statute is valid. *State ex rel. v. Miller,* 100 Mo. 440, and cases cited. All that the constitution requires is that the subjects embraced in the act shall be fairly and naturally germane to that recited in the title. *State v. Bennett,* 102 Mo. 357. There can be no doubt but all the provisions of section 1561 are naturally related and germane to one subject. In an act to punish cheats, frauds, etc., naturally belongs a provision as to what shall be a sufficient statement of the offense in the indictment. This one general subject is also clearly expressed in the title.

We have before said that this indictment does inform the accused of the nature and cause of the charge against him, and, this being so, we are at a loss to see how the statute, or the proceedings under it, violate the first section of the fourteenth amendment

to the constitution of the United States  The defendant was convicted according to and not without due process of law.

The judgment is, therefore, affirmed. SHERWOOD, C. J., BRACE and GANTT, JJ., dissent; THOMAS, MACFARLANE and BARCLAY, JJ., concur.

BRACE AND GANTT, JJ. (*dissenting*).—We dissent from the foregoing opinion.  Our view of the law is expressed in the opinion of SHERWOOD, C. J., in *State v. Terry*, 109 Mo. 601, decided by this court at the October term, 1891.